```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

|  |  |
|---|---|
| JAMES BLACK, | : |
| : | Civil Action No. |
| Plaintiff, : | 09-3670 (NLH)(KMW) |
| : |  |
| v. : |  |
| : |  |
| BINDING SPECIALTIES, INC., : | **MEMORANDUM OPINION AND** |
| : | **ORDER** |
| Defendant. : |  |

**HILLMAN, District Judge**

THIS MATTER having been raised by the motion filed by Plaintiff James Black on or around April 15, 2010, seeking default judgment against Defendant Binding Specialties Inc.; and

The Court having granted Plaintiff's motion for default judgment against Defendant in the Memorandum and Order dated September 20, 2010; and

The Court, in that Order, instructing Plaintiff to submit whatever documentation or evidence he may have to demonstrate the merits of his case and the amount of damages to which he is entitled; and

Plaintiff having provided such documentation to the Court, including a sworn and notarized Affidavit by Plaintiff demonstrating the merits of his case and his entitlement to damages, as well as copies of unemployment records and tax documents; and

The Court accepting Plaintiff's representations, which were

not opposed by Defendant with respect to this motion, and finding that Plaintiff is entitled to receive a total judgment of $40,973.53; and

The Court having calculated this sum based on the following values: (1) $94,864.80 in back pay[1] which represents the income

---

1.   The amount of back pay Plaintiff is entitled to was calculated by multiplying the following values: Plaintiff's hourly wage ($16.82), his weekly number of hours (40), and the number of weeks between termination of employment and default judgment (141).  Total value of back pay is therefore: $16.82 x 40 x 141 = $94,864.80.

In the pleadings, Plaintiff also sought front pay.  In employment discrimination cases, back pay coupled with reinstatement generally makes the aggrieved employee whole.  See Maxfield v. Sinclair Int'l, 766 F.2d 788, 796 (3d Cir. 1985), cert. den., 474 U.S. 1057 (1986).  However, if "the relationship between the parties [has] been so damaged by animosity," reinstatement may be impracticable.  Id. at 796.  In such cases, the court may award front pay at its discretion.  Goss v. Exxon Office Sys. Co., 747 F.2d 885, 890 (3d Cir. 1984); see also Donlin v. Philips Lighting North Am. Corp., 581 F.3d 73, 86 (3d Cir. 2009) (holding that front pay is discretionary, and should be allowed only when reinstatement is inappropriate due to a likelihood of continuing disharmony between the employer and employee).

Front pay is generally calculated from the date of judgment, and the cut-off date is left to the discretion of the District Court, "subject to the limitation that front pay only be awarded 'for a reasonable future period required for the victim to reestablish [his] rightful place in the job market.'"  Donlin, 581 F.3d at 87 (quoting Goss, 747 F.2d at 889-90); see also Weiss v. Parker Hannifan Corp., 747 F. Supp. 1118, 1135 (D.N.J. 1990) (relying on the "reasonable period required [] to reestablish his rightful place in the job market" language to deny front pay to plaintiffs who had found "roughly equal" employment after their termination, but prior to judgment).

Here, Plaintiff avers that he earned approximately $670 per week prior to termination.  (See Plaintiff's Affidavit to Demonstrate the Merits of His Case and That He is Entitled to Damages [Doc. No. 9] ("Plaintiff's Affidavit"), ¶ 12.)  Plaintiff also avers that he earns approximately $500 per week at his new job, which commenced in April 2010.  (Plaintiff's Affidavit [Doc. No. 9], ¶ 17.)  Because Plaintiff found new work prior to judgment, and he "has obtained a position in the job market

Plaintiff would have earned from time of his termination on January 6, 2008 until the time the Court granted the motion for default judgment on September 20, 2010; (2) $44,000 in unemployment compensation[2] for the time period of January 2008 through April 2010 wherein Plaintiff was unemployed; (3) $15,169 in mitigating damages[3] which represent Plaintiff's earned income from the time he attained new employment beginning in April 2010 until the time the Court granted the motion for default judgment on September 20, 2010; (4) $242.73 in prejudgment interest;[4] and

---

roughly equal to where [he] would be if [he] had stayed with [his previous employer]," the rationale for an award of front pay is lacking.  Weiss, 747 F. Supp at 1135.  In its discretion, the Court therefore declines to award Plaintiff front pay.

2.  The income Plaintiff received through unemployment compensation was calculated by adding the yearly unemployment compensation for the relevant time period of January 2008 through April 2010.  In 2008, Plaintiff received $18,144 in unemployment compensation, in 2009, $19,808, and in 2010, $6,048.  The total unemployment compensation is therefore: $18,144 + $19,808 + $6,048 = $44,000.  (See Plaintiff's Affidavit [Doc. No. 9], Ex. A-C.)

3.  Plaintiff's mitigation of damages was calculated by determining the total amount of income earned between the acquisition of new employment and the time of default judgment.  Total mitigating damages are $15,169.  (See Plaintiff's Affidavit [Doc. No. 9], ¶ 17.)

4.   Plaintiff, in his pleadings, requested prejudgment interest as a form of relief.  However, he failed to indicate to the Court the applicable rate in his pleadings or in any subsequent motion.  In federal question cases, the decision whether to award prejudgment interest, as well as the applicable rate of prejudgment interest, is left to the sound discretion of the district court. See Ambromovage v. United Mine Workers of Am., 726 F.2d 972, 981-82 (3d Cir. 1984) (holding that "the awarding of prejudgment interest under federal law is committed to the trial court's broad discretion"); Sun Ship, Inc. v. Matson Navigation Co., 785 F.2d 59, 63 (3d Cir. 1986) (holding that

5) $5,035 in attorney's fees;[5] and

    The Court, taking the total value of back pay ($94,864.80),

---

"[i]n federal question cases, the rate of prejudgment interest is committed to the discretion of the district court."). The awarding of prejudgment interest "should be ... based on considerations of fairness." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 273-74 (3d Cir. 2010) (citing Brock v. Richardson, 812 F.2d 121, 126 (3d Cir. 1987)). Because awards of prejudgment interest serve the important purpose of making a plaintiff whole, courts generally apply "a strong presumption in favor of awarding prejudgment interest[.]" Booker v. Taylor Milk Co., 64 F.3d 860, 868 (3d Cir. 1995). Exercising its discretion, the Court finds that an award of prejudgment interest to Plaintiff would substantially serve its intended purpose to compensate Plaintiff by accounting for the time-value of money to which he was entitled but never received.
    In determining the applicable rate of prejudgment interest, the Court is guided by Sun Ship, 785 F.2d at 63. In federal question cases, "the court may be guided by the rate set out in 28 U.S.C. § 1961" to determine the prejudgment interest rate. Id. at 63. The Court finds this approach persuasive, as it has been employed by numerous other courts to calculate prejudgment interest. See EEOC v. Wooster Brush Co. Employers Relief Assoc., 727 F.2d 566, 579 (6th Cir. 1984); Mars, Inc. v. Coin Acceptors, Inc., 513 F. Supp. 2d 128, 137 (D.N.J. 2007); McCoy v. Board of Trustees of Laborers' Intern. Union Local No. 222 Pension Plan, 188 F. Supp. 2d 461, 471 n.7 (D.N.J. 2002); Catalyst Employees' Ass'n v. Air Products, Chemicals, No. 00-2161, 2000 WL 1093614, *4 (D.N.J. Aug. 4, 2000). For these reasons, the Court calculates prejudgment interest in this case by applying the post-judgment interest rate pursuant to 28 U.S.C. § 1961. In accordance with Section 1961, the Court therefore applies the 1-year constant maturity Treasury yield as of the week prior to the date of this Order. The Federal Reserve website indicates that this figure, for the week ending February 17, 2012, was .17 percent (.17%). (See Board of Governors of the Federal Reserve System, Selected Interest Rates (Weekly) - H.15, http://www.federalreserve.gov/releases/h15/current (February 23, 2012)). In order to calculate the total prejudgment interest due, the following values are multiplied: the total amount of default judgment, excluding attorney's fees ($35,695.80), the yearly interest rate (.17%), and the number of years between termination and this Memorandum Opinion and Order (4). This calculation is: $35,695.80 x .0017 x 4 = $242.73.

5. (See Plaintiff's Affidavit [Doc. No. 9], Ex. D.)

subtracting the value of unemployment compensation ($44,000), subtracting the amount of mitigating damages ($15,169), adding the value of prejudgment interest ($242.73), and adding the value of attorney's fees ($5,035), arriving at a total of $40,973.53, representing Plaintiff's judgment award; and

The Court further finding that Plaintiff is entitled to an award of post-judgment interest.  The post-judgment interest award will be calculated as of the date of this final judgment.[6] "The rate of post-judgment interest is a matter of federal law and will be calculated in accordance with 28 U.S.C. § 1961." Jeereddi A. Prasad, M.D., Inc., Retirement Plan Trust Profit Sharing Plan v. Investor Assocs., Inc., 82 F. Supp. 2d 365, 371 n.11 (D.N.J. 2000).  "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  The Federal Reserve website indicates that this figure, for the week ending February 17, 2012, was .17 percent (.17%).  (See Board of Governors of the Federal Reserve System, Selected

---

6.  See Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 835 (1990) (holding that post-judgment interest under 28 U.S.C. § 1961 is to be calculated from the date of the entry of judgment and not the date of a jury verdict); Eaves v. County of Cape May, 239 F.3d 527, 536 (3d Cir. 2001) (ruling that post-judgment interest under 28 U.S.C. § 1961 should be calculated from the date that the court fixes the value of the award, and not the date at which the court first determined that the plaintiff was entitled to a monetary award).

Interest Rates (Weekly) - H.15, http://www.federalreserve.gov/releases/h15/current (February 23, 2012)).  Post-judgment interest is "computed daily to the date of payment" and "shall be compounded annually."  28 U.S.C. § 1961(b).

    Accordingly,

    IT IS on this   23rd   day of   February  , 2012, hereby

    **ORDERED** that Plaintiff shall be **AWARDED** a default judgment in the amount of $40,973.53 against Defendant; and it is further

    **ORDERED** that, along with filing on the electronic docket, a copy of this Order shall be sent to Defendant's address, as listed by the Motion for Default Judgment [Doc. No. 5], by first-class standard mail.

|  |  |
|---|---|
| At Camden, New Jersey | /s/ Noel L. Hillman<br>HON. NOEL L. HILLMAN, U.S.D.J. |